## DENNIS v. AUTRY & ELLIS.

Opinion delivered April 5, 1920.

1. TRIAL—INSTRUCTION ASSUMING DISPUTED FACT.—In an action to recover a broker's commission for producing a customer able, ready and willing to purchase, *held* that the court erred in assuming that there was no material contention between the parties as to when the contract should be performed.

2. BROKERS — READINESS TO PERFORM.—Where a prospective purchaser had made arrangements with a bank to have the purchase money paid to the vendor, this was equivalent to having the actual money in the bank.

Appeal from Columbia Circuit Court; *Geo. R. Haynie*, Judge on exchange; reversed.

*Stevens & Stevens*, for appellant.

1. While no particular day was named by which time the contract was to be wound up, the evidence shows that it was to be done without delay. If there was a breach of the first contract by Dennis writing Parker that he had decided not to take $10,000, then a cause of action accrued. 98 Ark. 60; 78 *Id.* 356. If such a breach did occur, it was waived by entering into a new contract. 9 Ark. 488.

2. Time may by implication become the essence of a contract when the condition of the parties and circumstances show that time of performance is to be the essence of the contract. 105 Ark. 626. Besides, the performance of the contract should be within a reasonable time. 77 Ark. 150; *Ib.* 116.

Two and a half months was not a reasonable time. Silence and failure to perform amounted to a "backout." 97 Ark. 522.

An agreement was made as to how and when the money was to be paid and within a certain time. This was a condition precedent which Dennis did not waive. 43 Ark. 193; 55 *Id.* 376.

3. The court's instructions to the jury as to the contract between Dennis and Parker based upon the evidence are wholly erroneous. 37 Ark. 333; 100 *Id.* 336;

105 *Id.* 469; 30 Ala. 211; 38 *Id.* 107; 87 *Id.* 305; 88 Ark. 422; 128 *Id.* 371; 41 *Id.* 393; 16 *Id.* 628; 45 *Id.* 492; 28 S. C. 572; 21 *Id.* 596; 2 Wash. 358; 45 Ark. 172; 37 *Id.* 592.

4.    There was no evidence that Dennis was to pay the commission and therefore no proof to sustain the verdict and the instructions should not have been given. 2 Ark. 397; 20 *Id.* 639; 21 *Id.* 298.

There was a mutual contract for successive acts to be performed and Parker failed to carry out the stipulations, and Autrey & Ellis can not recover damages against Dennis in this case. Dennis had the right to treat the contract as rescinded by Parker. 38 Ark. 174; 88 *Id.* 333.

*McKay & Smith*, for appellees.

1.    The jury by its verdict found that Parker was ready, willing and able to purchase the place on the terms agreed upon, which entitled appellees to their commission. 111 Ark. 194; 106 *Id.* 540; 84 *Id.* 462.

2.    No objections to instructions were incorporated in the motion for new trial.

HUMPHREYS, J.    Appellees instituted suit against appellant in the Columbia Circuit Court, to recover a commission of $500 for producing a purchaser ready, willing and able to purchase appellant's farm near Waldo, Arkansas, upon the terms, conditions and price agreed upon between appellees and appellant at the time appellant listed the farm with them for sale.

Appellant denied liability, and the cause was submitted to a jury upon the pleadings, evidence and instructions of the court, upon which a verdict was returned and judgment rendered against appellant in favor of appellees for the sum of $500. From that judgment an appeal has been duly prosecuted to this court.

The evidence disclosed that appellant listed his farm at Waldo, in said county, for sale, with Autry & Ellis, a real estate firm in Prescott, Arkansas, early in October, 1918, at the price of $10,000, with the understanding that

he would pay appellees a commission of 5 per cent. for selling said farm. Appellees soon thereafter showed the farm to J. A. Parker, of Elliott, Arkansas, who entered into an oral agreement to pay appellant $10,000 for the farm, $5,000 of which was to be paid in cash, and $5,000 on time, at 8 per cent. According to the terms of the contract, appellant was to get up an abstract and deposit it in the bank, after which the cash payment was to be deposited and the conveyance executed. Parker returned home for the purpose of making preparations to move onto the farm. A few days after Parker went home, appellant notified him by letter that he would not close the deal for less than $10,500. Parker communicated with the agents, Autry & Ellis, whereupon Mr. Autry went to see appellant, and, during the visit, entered into a written contract for the sale of the land to J. A. Parker for $10,500, $500 of which sum J. A. Parker was to pay appellees, and the balance to appellant. The old contract was vitiated by the new, the only change in the new being an increase of the consideration from $10,000 to $10,-500. Pursuant to the latter agreement, appellant deposited the abstract in the bank. The matter drifted along until the latter part of December without any notification to appellant that the cash payment had been deposited or without any offer on the part of the purchaser to pay the cash consideration to appellant. A difference arose between the parties, and the sale was never consummated.

Appellant testified that he had written, in the meantime, to the purchaser and failed to get a response; that, on December 28th, he called the purchaser up over the phone and told him he had obligations to meet on January 1st, and that he must close up the deal and make the cash payment not later than that date; that the purchaser, J. A. Parker, failed to present himself on or before that date, and did not come to see appellant until the 9th day of January, 1919; that he said he had come to close the deal, but did not have the money; whereupon, he, appellant, told Parker the deal was off, and that

no further proposition could be made which he would entertain.

J. A. Parker testified that the first notice he received from appellant to come and close the deal was on January 8, 1919; that he went on the next train and had an interview with appellant on January 9th, in which he offered to close the deal and pay the cash payment; that he had not deposited the money in the bank, but that he had made arrangements there to make the cash payment, and that appellant refused to close the deal.

In submitting the case, the court narrowed the issue to the sole question of whether the purchaser breached the contract by not being able, willing and ready to pay the money or whether the appellant breached it by declining or refusing to receive the cash payment when offered. In thus narrowing the issue, the court assumed, and instructed the jury in so many words, that there was no material contention between the parties as to when the contract should be performed. The chief difference between appellant and the purchaser, as indicated by their evidence, was whether the contract was to be consummated on the first day or on the 9th day of January, 1919. According to the evidence and conduct of both, the cash consideration was to be paid and the conveyance executed immediately after the abstract and money for cash payment had been placed in the bank. Of course, it could make no difference whether the actual money was in the bank or whether arrangements had been made there to pay it, but the question of the time of performance was the real issue in dispute between them. That issue should have been submitted to the jury. It was, however, taken from the jury by the following direction of the court: "Gentlemen of the jury: The court will tell you this, as I understand the issue in this case, there is no material contention between the parties as to when the contract should be performed, * * * the only material contention in this case for the jury is: Who breached the contract? Did plaintiff (referring to the purchaser) breach it by not having the money to pay

and not being able, willing and ready to pay the money on the contract, or did the defendant (appellant) breach the contract by declining and refusing to receive the cash payment as per the terms of the contract between the parties?'' This instruction was inherently wrong and prejudicial to the theory of appellant.

There are other alleged errors urged for reversal, which will not likely recur in a new trial, so we deem it unnecessary to discuss them.

For the error indicated, the judgment is reversed and the cause remanded for a new trial.